International Fin. Corp. v Carrera Holdings Inc. (2018 NY Slip Op 01541)





International Fin. Corp. v Carrera Holdings Inc.


2018 NY Slip Op 01541


Decided on March 8, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 8, 2018

Renwick, J.P., Richter, Andrias, Kapnick, Kahn, JJ.


601705/07 5925 5926 5924

[*1]International Finance Corporation, Plaintiff-Appellant,
v
Carrera Holdings Inc., et al., Defendants-Respondents.


White & Case LLP, New York (Francis A. Vasquez, Jr. of counsel), for appellant.
Richards Kibbe & Orbe LLP, New York (Steven Paradise of counsel), for respondents.



Judgment, Supreme Court, New York County (Eileen Bransten, J.), entered July 25, 2017, after a nonjury trial, dismissing the first cause of action for breach of contract, unanimously affirmed, with costs. Appeals from orders, same court and Justice, entered June 24, 2016, which, inter alia, denied plaintiff's motions to strike testimony and for an adverse inference, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
Plaintiff commenced this breach of contract action after defendants refused to buy out its share in Giavoni Manufacturing, a joint venture limited liability company majority-owned and -controlled by defendants that manufactured textiles in Tajikistan. The parties' Put Option Agreement allowed plaintiff to exit the investment by requiring defendants to buy back plaintiff's share for a price determined by a formula in the agreement. However, defendants would not be obligated to pay the Put Price if there occurred an "Expropriatory Event," defined in the agreement to include governmental action that has "the effect of changing ownership or control" of Giavoni and actions that "prevent it or its officers from carrying on all or a substantial part of its business or operations."
The trial court correctly found that the expropriatory clause was ambiguous as to whether an event amounting to complete nationalization of the company was required, and, upon consideration of extrinsic evidence, correctly concluded that the parties intended the term, as defined in the Put Option Agreement, to encompass a broader range of events (compare CT Inv. Mgt. Co., LLC v Chartis Specialty Ins. Co., 130 AD3d 1, 4 [1st Dept 2015] [defining "Expropriatory Act" as an "expropriation, confiscation, nationalization, requisition, or sequestration by law" that violates international law or materially alters local law]). In particular, in the exchanges of prior drafts of the expropriatory clause, the parties agreed to delete a provision that would have excluded from the definition of Expropriatory Events any conduct "not for the purpose of expropriation, requisition, confiscation, nationalization or the like."
The court correctly found that there was sufficient evidence that an Expropriatory Event had occurred. The Expropriatory Event consisted of the Tajik government's failure to refund the value added tax, imposition of illegal customs duties, hundreds of annual tax audits and warrantless inspections, and imposition of illegal taxes, all of which prevented Giavoni "from carrying on all or a substantial part of its business or operations." Plaintiff disputes whether these events occurred or had an impact of the magnitude that defendants represent. However, defendants' claims are corroborated by the documentary evidence. Indeed, plaintiff found the issues sufficiently compelling to intervene and negotiate with the Tajik government on defendants' behalf. In addition, labor disruptions by the Tajik government, which compelled Giavoni workers to leave work and harvest cotton while Giavoni continued to pay them, exacerbated the effects of the government's conduct and amounted to an Expropriatory Event.
The court correctly applied an objective standard to the Satisfaction Clause of the Put [*2]Option Agreement, which allowed defendants to rely on the Expropriatory Event and be relieved of their obligation to pay plaintiff if, "to [plaintiff's] satisfaction," they "made all reasonable efforts to mitigate the effect of such Expropriatory Event" (see Blask v Miller, 186 AD2d 958, 960 [3d Dept 1992]). The court correctly found that plaintiff's dissatisfaction with defendant's efforts was unreasonable. Among other things, defendants kept Giavoni afloat by extending millions of dollars in loans and buying shares of another company that was acting adversely to Giavoni's interests. They challenged the tax fine in court and obtained a reduced fine, and sought legal assistance in dissuading the Tajik government from its conduct. Defendants also kept plaintiff apprised of the government's actions and of the fiscal impact on Giavoni, notwithstanding their failure to strictly comply with a separate provision of the Put Option Agreement regarding annual audits.
The court properly admitted the testimony of Imerio Tacchella, the president not only of defendant Carrera S.P.A. but also of Giavoni, who described his familiarity with Giavoni's books and records and with effects of the Tajik government on Giavoni's operations, and who thus had a basis of knowledge on which to testify about those topics.
The court erred in concluding that Carrera S.P.A.'s principal Vivek Jacob's deposition testimony was admissible under CPLR 3117(a)(2), which permits deposition testimony of an officer of a party for use "by any party who was adversely interested when the deposition testimony was given or who is adversely interested when the deposition testimony is offered in evidence." Carrera, which offered the testimony in evidence, was not a party adverse to Jacob at the time when he was deposed or at trial. Nevertheless, the court correctly concluded that Jacob's testimony was admissible under CPLR 3117(a)(3)(I) because he was deceased by the time of trial. To the extent portions of Jacob's testimony were not based on his personal knowledge of the Tajik government's interference with operations at Giavoni (see Wathne Imports, Ltd. v PRL USA, Inc., 125 AD3d 434 [1st Dept 2015]; Eustaquio v 860 Cortlandt Holdings, Inc., 95 AD3d 548 [1st Dept 2012]), there is other evidence to support those facts, and plaintiff was not prejudiced by any error in admitting that testimony (see CPLR 2002).
Plaintiff waived any objection to defendants' failure to produce relevant financial documents, the existence of which it was aware of as early as 2009 (well before trial in 2015), by
filing its note of issue and certificate of readiness (see Fernandez v City of New York, 84 AD3d 595 [1st Dept 2011]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MARCH 8, 2018
CLERK